[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10368
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-01843-GAP-GJK

LAJEFFERY REEVES,

Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 17, 2013)

Before CARNES, Chief Judge, TJOFLAT and PRYOR, Circuit Judges.

PER CURIAM:

LaJeffery Reeves, a state prisoner serving a life sentence under Florida's Prison Releasee Reoffender Act, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition.    The district court granted a certificate of appealability on two of Reeves' claims for collateral relief, which allege that:  (1) the trial court violated due process by allowing him to waive his right to counsel; and (2) the trial court violated due process by prohibiting him from raising a mental-health defense.

I.

Reeves went on a violent, incendiary crime spree the morning of March 22, 2004.  In less than an hour he forced his way into three different women's homes and set each residence on fire.  He also physically attacked two of his victims — beating one of them so savagely that he knocked her unconscious.  He stuffed that victim into her bedroom closet and left her there after starting a fire in her bedroom.[1]  When the police arrived, Reeves attempted to flee, but officers quickly apprehended him.

The State of Florida brought three separate criminal cases against Reeves, which the trial court later consolidated into one.  Collectively, Reeves faced:  three counts of arson of a dwelling; two counts of burglary of a dwelling with an assault

---

[1] This was not Reeves' first brush with the law or these victims.  He had a lengthy criminal history and knew all three victims before March 22, 2004.  In fact, he broke into one of the victim's homes several days earlier (while the victim was away) and decapitated her two cockatiels.

2

or battery; and one count each of attempted first-degree murder, false imprisonment, and battery.

Shortly after the charges were filed, Reeves began acting strangely. When the trial court asked Reeves to identify himself at a status hearing on May 4, 2004, he responded: "Birth name is LaJeffery Reeves, Christ's name is Jesus." That same day he filed a handwritten request to proceed pro se. He captioned the filing "State v. LORD Jesus Christ," referenced "The Last Days," and claimed that he would take his case "to trial in the 'LORD GOD MOST HIGH IN JESUS CHRIST' name." The trial court ordered a competency evaluation and appointed two experts to evaluate Reeves' competency to stand trial and his sanity at the time of the alleged crimes.

The first two experts to examine Reeves determined that he was not competent to stand trial. Dr. Jeffrey Danziger evaluated Reeves on July 25, 2004, and diagnosed him as a paranoid schizophrenic. He found that Reeves' religious and paranoid delusions rendered him incompetent to stand trial. In his view, Reeves could not understand the factual proceedings of the trial because he believed that God would intervene in his trial and assure his freedom, and Reeves could not consult with his attorney with a reasonable degree of understanding because he believed his actions were justified by God. Dr. Danziger also submitted a supplemental report in which he concluded that Reeves was suffering

3

from schizophrenia at the time of the alleged offenses.  The report explained that Reeves did not appreciate the consequences or wrongfulness of his actions because he believed he was performing God's will.  Dr. Alan Berns evaluated Reeves on August 4, 2004, and diagnosed Reeves as having "psychotic disorder, not otherwise specified."[2]  He found, for the same basic reasons as Dr. Danziger, that Reeves' religious preoccupations rendered him incompetent to stand trial.  After reviewing the two experts' reports, the trial court declared Reeves incompetent to stand trial on August 27, 2004, and committed him to the Department of Children and Families for treatment.

Five months later, in January 2005, the Senior Psychologist with the Florida State Hospital, Dr. Trina Christner, found that Reeves was malingering and deemed him competent to stand trial.  Her findings can be sorted into three general categories.[3]  First, Dr. Christner pointed to events prior to clinical observation that indicated Reeves was malingering.  Reeves had previously attempted to feign a psychiatric disability to receive a disability check and lacked any prior history of psychiatric treatment or medication — despite the seriousness of his apparent symptoms.  He also fled the scene of his offenses and did not report delusional or paranoid beliefs until two days after those offenses.  Second, Dr. Christner pointed

---

[2] Dr. Berns' diagnosis ruled out both schizophrenia and malingering.

[3] The categories are our own, not Dr. Christner's.  We use them only for organization's sake. We also include just a few examples from each category because Dr. Christner's findings were extensive, and not all of her findings need to be discussed to resolve this appeal.

4

to behavior during clinical observation that suggested malingering. Reeves responded to his given name; refused to complete psychological testing; and did not talk about being Jesus Christ unless the conversation involved his competency, potential medication for his condition, or his violation of prison rules. Finally, Dr. Christner identified inconsistences in Reeves' reported delusions that suggested malingering. Reeves alternatively claimed that he had: always known he was Jesus Christ, discovered he was over the course of the past year, and realized he was when he arrived at the jail. Reeves also gave conflicting accounts about whether and how God spoke to him, first claiming that he heard voices and spirits and that God spoke to him directly, then denying hearing voices and claiming God communicated with him through various media — though he could not provide details of those communications. While he claimed that God told him to set fire to the women's homes because they were witches and jezebels, Reeves knew all three victims before the offenses. Reeves also did not profess a belief system consistent with a delusion that he was Jesus Christ. He was concerned with worldly matters, could not provide any details regarding God's plan for him, and claimed that "Jesus says to enjoy your life."

Dr. Christner's report prompted the trial court to order a second round of competency evaluations by the two doctors who had originally evaluated Reeves. Dr. Berns reexamined Reeves on April 26, 2005, and concluded that he was

competent to stand trial and was sane at the time of the alleged offenses. He admitted that he had concerns about malingering when he first evaluated Reeves, and justified his change in opinion based on several of Dr. Christner's findings. He cited several findings as particularly persuasive: the inconsistencies in Reeves' reported delusions; Reeves' prior attempt to fake a psychiatric disability; the fact that Reeves knew all of his victims; and Reeves' failure to talk about religion and God outside of discussions about his competency, potential medication, or violation of prison rules.

Dr. Danziger reexamined Reeves on May 7, 2005, and stuck to his original diagnosis of paranoid schizophrenia. He also reaffirmed his conclusion that Reeves was not competent to stand trial. In his view, the inconsistences that Dr. Christner cited did not prove Reeves was malingering because psychotic individuals are not perfectly consistent or rational in their beliefs. Dr. Danziger also put significant weight on several other aspects of Reeves' behavior. He pointed out that Reeves did not act in a bizarre or dramatic fashion that drew attention to himself, denied that there was anything wrong with him, and refused treatment for his condition. Dr. Danziger reasoned that someone who is malingering would have done more to draw attention to his symptoms. Similarly, Reeves did not demonstrate confusion or cognitive deficits, which usually happens when malingerers claim psychosis.

6

The trial court ordered a third competency evaluation to help resolve the conflicting reports.  Dr. Daniel Tressler evaluated Reeves on September 17, 2005. He ruled out malingering and diagnosed Reeves as having personality disorder with antisocial and paranoid features.  Nevertheless Dr. Tressler found that Reeves was competent to stand trial if he had counsel representing him.  He concluded that Reeves' religious delusions did not by themselves interfere with his ability to understand the trial proceedings or consult with counsel.  Dr. Tressler did, however, conclude that Reeves' belief that God would act as his attorney prevented him from competently representing himself.

The trial court considered all the reports and took testimony from Dr. Berns, Dr. Danziger, and Dr. Tressler in a series of competency hearings in early 2006. The trial court ultimately found that Reeves was competent to stand trial.  It did so in a written opinion in April 2006, in which it explained that the reasoning laid out by Dr. Christner and Dr. Berns was more persuasive than that of the other experts.

Reeves continued to insist on representing himself, so the court conducted a Faretta hearing on June 5, 2006.[4]  During that hearing, the court advised Reeves of his right to counsel and reviewed the advantages and disadvantages of representing himself.  It also went over the charges with Reeves, advising him of the potential

---

[4] A Faretta hearing, named after the Supreme Court's decision in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525 (1975), is a pretrial hearing designed to assure that defendants seeking to proceed pro se understand the consequences of waiving their right to counsel.  See United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002).

penalties that each charge carried.  Reeves said he understood the consequences of representing himself and the sentence he faced if convicted, though he also reiterated his belief that God would act as his attorney.  The trial court concluded, based on the experts' reports and Reeves' testimony at the hearing, that he was competent to waive his right to counsel and represent himself.  The trial court also conducted another Faretta hearing the morning of Reeves' trial and confirmed its finding that he was competent to waive his right to counsel and represent himself.

In July 2006 the State filed a motion in limine to exclude any evidence of Reeves' mental health.  Florida's rules of criminal procedure require defendants to file, within fifteen days of their arraignment, notice of their intent to present a mental-health defense at trial.  See Fla. R. Crim. P. 3.216(e).  Reeves never did — not when the public defender initially appointed to represent him suggested filing such a notice, and not when he represented himself.  Reeves explained that he did not file the notice because he "believe[d] in the Lord" and did not want to lose his faith that God would protect him at trial.  But Reeves had a change of heart the morning of his trial.  He objected to the motion in limine, explaining that he now wanted to present a mental-health defense because he was uncertain "what the outcome is going to be" at trial and did not want to lose his "options."  The trial court overruled his objection, finding that Reeves had no justification for failing to file timely notice of a mental-health defense.

8

Reeves' trial in November 2006 lasted two days.  Reeves called just one witness:  himself.  He testified that God told him to burn the victims' homes because they were jezebels who practiced voodoo.  He did not, however, tell the jury that he was Jesus Christ.  During his closing argument, Reeves alluded to the order barring him from presenting mental-health defense, the prosecutor objected, and the trial court sustained the objection.  The jury found him guilty on all counts except the false imprisonment and attempted first-degree murder charges.  The trial court sentenced him to life imprisonment under Florida's Prison Releasee Reoffender Act.

Reeves appealed to Florida's Fifth District Court of Appeal in December 2006.  He argued, among other things, that the trial court (a) erred in finding him competent to waive his right to counsel and (b) violated his due process rights by prohibiting him from presenting a mental-health defense.  The appellate court affirmed Reeves' convictions in June 2008, and the Supreme Court of Florida denied review in January 2009.  Reeves then filed a number of unsuccessful state post-conviction motions before filing his federal habeas petition in December 2010.  The district court affirmed the state appellate court's decision under the deferential standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA).  See 28 U.S.C. § 2254(d).  The district court did, however, issue a certificate of appealability on two claims:  (1) that the trial court violated due

9

process by allowing him to waive his right to counsel; and (2) that the trial court violated due process by prohibiting him from raising a mental-health defense.

## II.

When reviewing a district court's decision denying a § 2254 habeas petition, "we review only for clear error the court's factfindings but review de novo the court's application of the law to those facts." Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1256 (11th Cir. 2012).

The state court's decision receives greater deference. AEDPA precludes federal habeas relief unless Reeves can demonstrate that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). That is a high bar. To clear it Reeves must establish that "no 'fairminded jurist' could agree" with the state court's decision — be it an application of clearly established federal law or a determination of fact. Holsey, 694 F.3d at 1257 (quoting Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011)).

### A.

Reeves claims that the district court violated his constitutional right to due process by allowing him to waive his right to counsel. The Due Process Clause

10

requires courts to conduct a two-part inquiry before accepting a defendant's decision to waive his right to counsel. See Godinez v. Moran, 509 U.S. 389, 400–02, 113 S.Ct. 2680, 2687–88 (1993). First, the court must confirm the defendant's general competence to stand trial. Id. at 400, 113 S.Ct. at 2687. A defendant is competent to stand trial if he has both a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" Id. at 396, 113 S.Ct. at 2685 (quoting Dusky v. United States, 362 U.S. 402, 403, 80 S.Ct. 788, 789 (1960)). Second, the court must assure itself that the defendant's waiver of his right to counsel is knowing, intelligent, and voluntary. Id. at 400, 113 S.Ct. at 2687.

The state appellate court applied that two-part inquiry in reviewing Reeves' claim and affirmed the trial court's decision to accept his waiver. See Reeves v. State, 987 So. 2d 103, 105–08 (Fla. 5th DCA 2008). In the first part of its inquiry, the court concluded that, despite conflicting expert opinions, there was "sufficient evidence" supporting the trial court's finding that Reeves was competent. Id. at 106. The appellate court stressed the deference it owed to the trial court, which had the chance to personally observe the defendant and hear the experts' testimony. Id. ("[I]t would, of course, be inappropriate for us to substitute our judgment for that of the trial court."). In the second part of its inquiry, the

11

appellate court found that the extensive colloquy between the trial court and Reeves supported the trial court's finding that his waiver was knowing, intelligent, and voluntary. Id. at 108. The court again stressed the deference it owed to the trial court's in-person assessment. See id.

Reeves challenges the trial court's factual determination that he was competent to waive his right to counsel. To succeed he must show, by clear and convincing evidence, that there was not a sufficient factual basis in the record for the state appellate court to affirm the trial court. See Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). He has not met that demanding standard. Dr. Christner and Dr. Berns offered numerous reasons to support their conclusion that Reeves was malingering, providing a factual basis in the record to support the state court's decision. Reeves does not explain why it would be impossible for a "fairminded jurist" to find those reasons more persuasive than the contrary ones offered by Dr. Danziger and Dr. Tressler. Holsey, 694 F.3d at 1257 (quotation marks omitted). That was his burden under 28 U.S.C. § 2254(d)(2), and his failure to carry it is fatal to his claim.

### B.

Reeves also claims that the district court violated his constitutional right to due process by prohibiting him from presenting a mental-health defense. The Supreme Court has repeatedly declared that courts may exclude relevant evidence

12

— even evidence of a defendant's innocence — where a defendant fails to comply with a valid procedural rule.  See, e.g., Montana v. Egelhoff, 518 U.S. 37, 42, 116 S.Ct. 2013, 2017 (1996) (plurality opinion); Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646, 653 (1988); Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049 (1973).  And the Supreme Court has specifically held that enforcing a notice-of-defense deadline like Florida's serves a "legitimate and obvious" state interest:  "protecting itself against an eleventh-hour defense."  Williams v. Florida, 399 U.S. 78, 81, 90 S.Ct. 1893, 1896 (1970) (rejecting a due process challenge to a state's notice-of-alibi rule).

Reeves' case involves just such an eleventh-hour defense.  He did not announce his intention to present a mental-health defense until after voir dire, and he had no good excuse for his failure to announce it before the deadline passed. The State thus had a legitimate interest in enforcing the notice deadline to prevent the "surprise" and "undue delay" that would have resulted if the trial court had allowed Reeves to present mental-health evidence.  Michigan v. Lucas, 500 U.S. 145, 152–53, 111 S.Ct. 1743, 1748 (1991).  The state appellate court's decision affirming the exclusion of any mental-health evidence was therefore neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405–12, 120 S.Ct. 1495, 1519–23 (2000).

13

**AFFIRMED.**